UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE ISMAEL RECINOS ACOSTA, | CASE NO. 2:26-cv-01287-JHC |
| Petitioner, | ORDER |
| v. | |
| WARDEN NORTHWEST DETENTION CENTER, | |
| Respondent. | |

**I**

**INTRODUCTION**

This matter comes before the Court on Jose Ismael Recinos Acosta's Petition for Writ of Habeas Corpus.  Dkt. # 1.  The Court has considered the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law.  Being fully advised, for the reasons below, the Court GRANTS the Petition.  Dkt. # 1.

**II**

**BACKGROUND**

Petitioner is a native and citizen of El Salvador who entered the United States at an unknown time and place in 2006, and who has remained in the United States since then.  Dkt # 12 at 2.  On February 9, 2018, Petitioner filed an I-130 Petition for Alien Relative based on a

ORDER - 1

sibling. *Id.* The status of this application changed to "In Progress" on July 31, 2025. *Id.* Additionally, in 2023, Petitioner was the victim of a violent crime, and has been pursuing a U-Visa application as such. Dkt. # 2 at 2.

On September 2, 2025, the Federal Bureau of Investigation (FBI) went to Petitioner's residence as part of an investigation stemming from a tip that Petitioner may be a potential MS-13 gang member. Dkt. # 12 at 2; Dkt. # 13-1. The same day, Petitioner was taken into custody, charged as inadmissible, and transferred to the Northwest ICE Processing Center (NWIPC).[1] Dkt. # 12 at 2; *see* Dkt. # 13-2.

Petitioner then underwent a series of proceedings before the immigration court and this court. Petitioner was represented during his proceedings before the immigration court. *See* Dkt. # 20. The relevant dates and decisions are as follows:

- On October 1, 2025, an Immigration Judge (IJ) denied Petitioner's bond request based on lack of jurisdiction under 8 U.S.C. § 1225(b). Dkt. # 12 at 2.

- On November 12, 2025, an IJ ordered Petitioner removed to El Salvador, and Petitioner preserved appeal. Dkt. # 13-3.

- On December 23, 2025, Petitioner, along with multiple other detainees, received habeas relief as a member of the *Rodriguez Vasquez* Bond Eligible Class, and he was ordered a bond hearing under 8 U.S.C. § 1226(a). Dkt. # 1 at 2; *see Zavala v. Hermosillo*, 2025 WL 3721729 (W.D. Wash. Dec. 23, 2025).

- On January 27, 2026, Petitioner received his court-ordered bond hearing and the IJ founds that Petitioner did not present a danger to the community but did present

---

[1] Petitioner says he was taken into custody on Sept. 12, 2025; but based on the rest of the record, this appears to be erroneous. Dkt. # 1 at 5.

ORDER - 2

a flight risk because Petitioner had a final order of removal, and denied bond. *See* Dkt. # 19.

- On February 1, 2026, the Board of Immigration Appeals (BIA) acknowledged receipt of Petitioner's appeal from his removal order. Dkt. # 12 at 3.

- On February 26, 2026, the BIA issued an order accepting Petitioner's appeal from his removal order and set a briefing schedule.[2] Dkt. # 1 at 3; *see also* Dkt. # 20 at 5.

- The same day, Petitioner appealed his bond determination. Dkt. # 12 at 3.

- On March 4, 2026, the IJ issued a written decision for her January 27, 2026 bond denial; in the written order she made the same findings, but based the flight risk finding on both Petitioner's final order of removal and the allegations of gang involvement. Dkt. # 13-4.

- On March 11, 2026, Petitioner moved for reconsideration of the IJ's bond denial based, in part, on the BIA's acceptance of the appeal, and the next day the IJ denied the request based on no changed circumstances. Dkt. # 20 at 2-7.

Petitioner's appeal of his final removal order remains pending, and he is still detained at NWIPC. *See* Dkt. # 12.

---

[2] Between the BIA acknowledging receipt of the appeal and accepting the appeal, Petitioner, through counsel, filed a second habeas petition requesting injunctive relief to prevent removal or transfer out of district while he pursued his appeal. Dkt. # 1 at 5. The court ultimately dismissed that matter without prejudice after the BIA accepted his appeal. *See Recinos Acosta v. Scott et al.*, 26-cv-00405-SKV, Dkt. # 11 (March 10, 2026).

ORDER - 3

## III

### DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

At the outset, the Court must determine what is being challenged by Petitioner who moves pro se. *See* Dkt. # 1. The Respondent frames this challenge as a civil rights claim, which, as they say, cannot be brought in a habeas petition.[3] Dkt. # 11 at 4. While Petitioner does raise civil rights concerns regarding his arrest, he also raises constitutional challenges to his bond denial that the Court can and does consider.[4] Dkt. # 1 at 2, 6-7, 11-12; *see* Dkt. # 16 at 3 ("the bond hearing violated due process") (capitalization normalized); *see also Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006) ("We must 'construe pro se habeas filings liberally'") (quoting *Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir.2005)).

---

[3] Petitioner correctly names "Warden, Northwest ICE Processing Center" as the Respondent. That said, Respondent has not defended the detention, and instead the Government is acting as the responding party. *See Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained."). The Court thus refers to the Government's briefing when it discusses the response or Respondent.

[4] Petitioner brings his Petition on multiple grounds. *See generally* Dkt. # 1. He alleges facts related to his bond denial under "grounds" that all go to challenging the legality of the decision, some of which specifically invoke due process and some of which are more vague, such as "government misconduct." *See* Dkt. # 1 at 6-7; *see also id.* at 12 ("Bond Hearing Was Constitutionally Defective"). Further, this question was not raised or addressed in either of Petitioner's previous habeas petitions. *See Zavala*, 2025 WL 3721729 (W.D. Wash. Dec. 23, 2025); *Recinos Acosta*, 26-cv-00405-SKV, Dkt. # 11 (March 10, 2026). The Court considers grounds one, three, and four to all be challenging the legality of the bond denial. The Court agrees with Respondents that it lacks jurisdiction to consider the Fourth Amendment challenge raised in ground two. Dkt. #1 at 6.

ORDER - 4

A.    Jurisdiction

Federal courts generally lack jurisdiction to review discretionary bond determinations. *See* 8 U.S.C. § 1226(e). But judicial review of constitutional claims or questions of law is not precluded, and a district court has jurisdiction to review an IJ's denial of bond when the bond denial is legally erroneous or unconstitutional. *Martinez v. Clark*, 124 F.4th 775, 781-82 (9th Cir. 2024); *see Soriano v. Hernandez*, 2026 WL 969764, at *2-3; *see, e.g.*, *Barrios Osorio v. Bondi*, 2026 WL 607765, at *2 (W.D. Wash. Mar. 4, 2026); *K.G.M.Q. v. Bondi*, 2026 WL 962609, at *10 (W.D. Wash. Apr. 9, 2026).

Petitioner does not challenge the IJ's discretionary ruling but argues that the "the bond hearing violated due process." Dkt. # 16 at 3 (capitalization normalized); *see also* Dkt. # 1 at 6-7. This is a constitutional claim requiring the Court to consider questions of law, and thus the Court has jurisdiction.

B.    Bond Hearing

1.    Standard of Review

"The habeas court's review of an immigration judge's determination of flight risk is for abuse of discretion." *Soriano*, 2026 WL 969764, at *4 (citing *Martinez*, 124 F.4th at 784-85 & *Anyanwu v. Bondi*, 2025 WL 3466910, at *4 (W.D. Wash. Oct. 6, 2025), *report and recommendation adopted*, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025)). "Under an abuse of discretion standard, '[a district court] cannot reweigh evidence . . . [but] can [only] determine whether the BIA applied the correct legal standard.'" *Martinez*, 124 F.4th at 785 (considering "dangerousness") (citation modified); *see id.* at 783 ("Even though what constitutes 'dangerousness' is malleable and involves agency discretion, . . . this is still a legal standard so long as federal courts can 'assess whether an IJ correctly applied the statutory standard to a given set of facts."); *see also Lopez Reyes v. Bonnar*, No. 18-CV-07429-SK, 2018 WL 7474861, at *8

(N.D. Cal. Dec. 24, 2018) ("where the IJ misinterpreted or failed to consider probative evidence, the Court may review such errors under its habeas review.").

2.    The IJ's findings

The IJ found that there was not enough to establish that Petitioner is a danger to the community, but found that Petitioner failed to demonstrate that he is not a flight risk and thus the IJ denied bond. *See* Dkt. # 19; Dkt. # 20 at 15-16.

The basis for the IJ's findings differs in the oral decision issued on January 27, 2026, and the written decision filed on March 4, 2026. In the oral decision the IJ specifically found, "Given [Petitioner]'s final order of removal I do find that he is a flight risk and I don't have enough information regarding danger. The [Petitioner] has completed proceedings and has an order. I do not find any bond appropriate, and bond is denied, in that he is a flight risk."[5] At no point in the hearing did the IJ question or mention the gang allegations. *See* Dkt. # 19.

The IJ's written order makes the same findings but includes an additional basis for the flight risk determination. In the March 4, 2026 written order, the IJ stated the findings as:

> The court found that there was not enough to establish the finding that respondent is a danger to the community without more. The court found that the respondent, a potential gang member with a final order of removal from the United States has failed to demonstrate he is not a flight risk.

Dkt. # 20 at 16.

3.    Analysis

Petitioner says he is not a danger or a flight risk and challenges the alleged gang membership as the basis for such a finding. Dkt. # 1 at 2, 6-7. And he further alleges, the IJ ignored substantial evidence and failed to consider factors relevant to a flight-risk finding. Dkt.

---

[5] No transcript was provided, but at the Court's request, audio of the hearing was submitted to the Court. *See* Dkt. # 19.

ORDER - 6

# 1 at 12; *see also id.* at 7, 9-10; *see also* Dkt. # 16 at 3-9.  And thus, he says, the resulting detention is arbitrary, punitive, and unconstitutional.  Dkt. # 1 at 7.  Petitioner submits to this Court the record he presented to the IJ, which consists of 90 pages of letters, employment history, a criminal record search, and tax returns.  *See generally* Dkt. # 2.  After a request from the Court, the Government also submits their showing before the IJ, which consisted only of his record of deportability (also known as Form I-213), the IJ order of removability, and the BIA rejection letter.[6]  Dkt. # 20 at 128.

The Court agrees with Petitioner that the IJ did not apply the correct legal standard.  In determining whether a Petitioner is a danger to the community or a flight risk, the IJ may consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020).

Before the IJ, Petitioner submitted evidence that his "entire life is here in Washington." Dkt. # 2 at 2.  He provided his fixed address, which he described as his "stable home."  Dkt. # 2 at 2; *see* Dkt. # 20 at 85 (showing history of rent payments).  He informed the IJ he had been in not just the United States but the state of Washington for almost 20 years.  Dkt. # 2 at 2.  He said

---

[6] Respondents have submitted the entire file before the IJ, but certain pages are unreadable. Specifically, one page of Petitioner's declaration where he explains why "I Am Not a Flight Risk" is completely unreadable.  *See* Dkt. # 20 at 29.  The Court thus references the exhibit provided by Petitioner. Dkt. # 2 at 2.

ORDER - 7

his "most important ties are to [his] family, who all live here in Washington," listing his spouse, their U.S. citizen child who at the time of the hearing was 11 years old, and his sister who is a U.S. citizen. Dkt. # 2 at 2; *see* Dkt. # 20 at 55 (Petitioner's son's birth certificate). And through his sister, he may be entitled to seek citizenship - and in fact Petitioner began that process in 2018 by submitting an I-130 petition. Dkt. # 2 at 2; *see* Dkt. # 20 at 51-53 (I-130 petition). He also informed the IJ that while he was detained his family was "falling behind on [their] bills" and his wife's "income alone is not enough to support [their] family in Seattle." Dkt. # 2 at 2. He submitted evidence that he has been employed at the same pizza shop since June 2007, and his employer wrote a letter informing the IJ that Petitioner would have a job waiting for him and offering to post Petitioner's bond. Dkt. # 2 at 2; *see* Dkt. # 20 at 47-49; *see also* Dkt. # 20 at 57-65 (letters from colleagues many of whom have known Petitioner for over a decade); Dkt. # 20 at 67-83 (multiple years of tax returns, dating back to 2013). All of these factors support a no-flight risk finding.

Petitioner's interactions with law enforcement and the immigration court indicate the same. Petitioner has no record of appearance in court nor, seemingly, record of needing to appear in court. *See generally* Dkt. # 20. Petitioner has no criminal history in the United States or El Salvador, and in fact, was the victim of a violent crime in 2023 and fully cooperated with the Seattle Police Department. Dkt. # 2 at 1; *see* Dkt. # 20 at 42-45 (El Salvador certificate of no criminal record); Dkt. # 20 at 130 (I-213 listing no criminal history); *see also* Dkt. # 20 at 33-36 (U-Visa Law Enforcement Certificate stemming from the 2023 incident and signed by a Seattle Police Officer). Besides his initial entry 20 years ago, Petitioner has no immigration violations and instead has sought twice to pursue a legal path to citizenship or legal permanent residence, dating back to 2018. Dkt. # 20 at 129-131; *see* Dkt. # 20 at 33-36 (U-Visa); Dkt. # 20 at 51-53 (I-130 petition). Petitioner has no record of attempting to flee prosecution, and he even appears

to have cooperated with his arrest. *See* Dkt. # 20 at 130 (Petitioner "was amenable to being placed into removal proceedings"). The manner of Petitioner's entry into the United States is unknown, and at best, this is a neutral factor. Dkt. # 20 at 130. In conclusion, no factor indicates Petitioner is a flight risk and instead all factors are neutral or indicate that he is not a flight risk.

The only fact that might indicate Petitioner should be denied bond is the potential gang allegation. Petitioner was accused by an unnamed tip that he was a "well-known" gang member and "a fugitive from El Salvador," but even the Government's records show he has no criminal history and the Government of El Salvador confirmed he has no criminal record. Dkt. # 20 at 129-131; Dkt. # 20 at 42-45 (El Salvador certificate of no criminal record). It appears that after Petitioner was detained, no further investigation or action was taken into these allegations. *See generally* Dkt. # 20. The IJ's conclusion that there was not enough to make a danger to the community finding suggests that she found this showing to be insufficient. And yet, even though this factor is most pertinent to assessing dangerousness, the IJ made the opposite determination as to flight risk. *See Martinez*, 124 F.4th at 783 ("'[t]he Guerra factor most pertinent to assessing dangerousness' is 'the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses.'"). This, in conjunction with the omission in the IJ's original oral order of the gang allegations suggests that they were not a determinative factor in her decision or that the IJ abused her discretion in finding that the gang allegations, which she found to be insufficient for a dangerousness finding, sufficed to support a flight risk finding.

The IJ did consistently and explicitly consider and base her decision on the fact that Petitioner had, at the time, a final removal order. This is not a factor *Guerra* instructs the IJ to consider. Regardless, Petitioner had submitted to the IJ the briefing before the BIA as to why the appeal should still proceed. *See* Dkt. # 20 at 92-119 (motion to the BIA to accept late appeal

ORDER - 9

based on a filing error and miscommunication by the BIA). It is unclear what the IJ made of this showing as it was not discussed at the hearing. *See* Dkt. # 19. And she did not mention it in her written order even though the BIA accepted the appeal before the IJ submitted her written order. Dkt. # 20 at 15-16. Still, as the BIA did ultimately accept the appeal and it is the sole basis of the IJ's finding, there is no basis to conclude Petitioner was or is a flight risk.[7]

D.      Remedy

Petitioner requests immediate release. Dkt. # 1 at 7. Respondents are silent on the appropriate remedy. *See generally* Dkt. # 11. Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Under similar facts, this jurisdiction has found no basis for similarly situated petitioners to continue to be detained. *See Soriano*, 2026 WL 969764, at *6 (ordering immediate release); *Vasquez Lopez*, 2026 WL 984151, at *3 (same); *W.T.M.*, 2026 WL 262583, at *5 (same); *see also Garcia v. Hyde*, 817 F. Supp. 3d 112, 131 (D.R.I. 2025) (ordering habeas petitioner's immediate release from custody "[g]iven the due process violations that pervaded his bond hearing[.]"); *Miri v. Bondi*, 2026 WL 622302, at *12 (C.D. Cal. Mar. 5, 2026) (ordering habeas petitioner's immediate release after finding immigration judge abused discretion in denying petitioner's request for bond at the bond determination hearing). The Court finds the same here, and thus the appropriate remedy is for Petitioner to be immediate released with reasonable conditions of supervision.

---

[7] The IJ had an opportunity to correct this error after Petitioner moved for reconsideration of his bond denial but declined to do so. Dkt. # 20 at 2-7. That decision is not challenged in this habeas petition. *See generally* Dkt. # 1.

ORDER - 10

## IV

### CONCLUSION

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS as follows:

(1) Respondents shall release Petitioner from detention within 24 hours of this order. Upon release, Petitioner shall be subject to reasonable conditions of supervision.

(2) Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless and until he is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate.

(3) The Clerk is DIRECTED to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 27th day of May, 2026.

John H. Chun
John H. Chun
United States District Judge

ORDER - 11